UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEBORAH R. PASTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:18 CV 1043 DDN |
| ) | |
| ANDREW SAUL,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Deborah R. Paster for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* The parties consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Administrative Law Judge (ALJ) is affirmed.

### I. BACKGROUND

Plaintiff Deborah R. Paster applied for Title II disability benefits on July 29, 2014, at the age of 54. (Tr. 177-83). Plaintiff alleges she was disabled on account of fatigue, headaches, and stress. (Tr. 25). Plaintiff's application was initially denied in November 2014. (Tr. 79-83). She requested a hearing before an ALJ. (Tr. 84). The ALJ heard testimony from plaintiff and a vocational expert on March 24, 2017. (Tr. 43-70). After the hearing, the ALJ sent plaintiff for a consultative examination, which was

---

[1]The Honorable Andrew M. Saul is now the Commissioner of Social Security. In that capacity, Mr. Saul is substituted as the defendant in this suit. Fed. R. Civ. P. 25(d). No further action needs to be taken to continue this suit. 42 U.S.C. § 405(g) (last sentence).

conducted on May 5, 2017. (Tr. 585-600). On August 25, 2017, the ALJ decided that plaintiff was not disabled under the Social Security Act. (Tr. 11-19). The Appeals Council denied plaintiff's request for review. (Tr. 1). The decision of the ALJ stands as the final decision of the Commissioner of Social Security.

## II. MEDICAL HISTORY

The Court adopts the parties' several statements of uncontroverted material facts (Docs. 20, 25). These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The Court discusses specific facts as they are relevant to the parties' arguments.

## IV. DECISION OF THE ALJ

To determine whether a claimant qualifies for Social Security disability benefits, the ALJ must conduct a five-step sequential evaluation.[2] *See* 20 CFR § 404.1520.

The ALJ found that plaintiff would last meet the insured status required by Title II of the Act on December 31, 2017. At Step 1, the ALJ found that plaintiff had not performed substantial gainful activity since the alleged onset date of disability, May 1, 2014. (Tr. 13). At Step 2, the ALJ found that plaintiff had the severe impairment of degenerative joint disease. (*Id*.). At Step 3, the ALJ found that plaintiff did not have an

---

[2] If at any step in the sequential evaluation the claimant is found to be disabled or not disabled, her claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). At Steps One through Three, the Commissioner determines: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset date of disability, (2) whether she has any severe mental or physical impairment(s), and (3) whether the severity of those impairment(s) meets or medically equals the severity of any impairment on the Commissioner's list of presumptively disabling impairments. *Id*. at (a)(4)(i)-(iii). If needed, the Commissioner assesses the claimant's residual functional capacity (RFC) to perform work, which is used at Step Four to determine whether she can perform her past relevant work, and at Step Five (if necessary) to determine whether she can make an adjustment to other work that exists in significant numbers in the national economy. *Id*. at (a)(4)(iv)-(v), (e).

2

impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 14).

Despite the limitations from plaintiff's impairments, the ALJ found that plaintiff retained the residual functional capacity to perform the full range of sedentary work as defined in the regulations.[3] (*Id*.). In formulating her RFC assessment, the ALJ considered and discussed not only plaintiff's severe impairment of degenerative joint disease, but also considered and discussed additional impairments and symptoms that she alleged were disabling. (Tr. 14-18). These impairments and related symptoms included stress, headaches/migraines, sleeping all day, hypertension, hypothyroidism, diabetes, sleep apnea, low back pain, hip pain, knee pain, chest pain, left arm pain, dizziness, and obesity. (*Id*.). The ALJ found that plaintiff's allegations regarding her symptoms were not entirely consistent with the medical evidence and other evidence in the record and found that she had failed to carry her burden to prove more restrictive functional limitations than those included in the ALJ's RFC assessment. (Tr. 18).

Relying on the vocational expert's testimony in response to a hypothetical question, the ALJ concluded at Step 4 that plaintiff could perform her past relevant work as a collections agent. (Tr. 19). Accordingly, the ALJ found plaintiff was not disabled and did not proceed to Step 5 in the sequential evaluation.

## V. GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and

---

[3] Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). "Occasionally" means occurring from very infrequently up to occurring one-third of the time; thus, periods of standing or walking should generally total no more than about two hours during an eight-hour workday. SSR 83-10.

are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id*. As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or could be expected to last for at least 12 continuous months. 42 U.S.C. § 1382c(a)(3)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework, described in footnote 2 above, is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Pate-Fires*, 564 F.3d at 942 (describing the five-step process).

## VI. DISCUSSION

Plaintiff claims that the ALJ (a) failed to advise her of her right to counsel or ask probing questions during the evidentiary hearing and (b) failed to properly evaluate plaintiff's claim at Step 2 of the sequential evaluation. The Court disagrees.

### A. Plaintiff's right to counsel and the ALJ's conduct of the hearing

Plaintiff contends that the ALJ failed to advise her of her right to counsel and failed to ask sufficiently probing questions of her as an unrepresented claimant. (Doc. 19). These arguments are without merit.

Social Security regulations provide that if a claimant is not represented by an attorney and is initially denied benefits, the Commissioner "will include with the notice of that determination or decision information about your options for obtaining an attorney

to represent you in dealing with us. We will also tell you that a legal services organization may provide you with legal representation free of charge if you satisfy the qualifying requirements applicable to that organization." 20 C.F.R. § 404.1706.

Disability claims under the Social Security Act are non-adversarial, and the ALJ has a well-recognized duty to develop the record. *See Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014). Accordingly, if the claimant is without counsel, the ALJ must ask probing questions of the claimant to ensure the record is well-developed. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000). "[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994).

The record reflects that plaintiff was both informed of her right to counsel and the ALJ asked sufficiently probing questions for development of the record. The ALJ repeatedly advised her of her right to counsel. (Tr. 158, 162-63). In advance of her hearing, the ALJ provided plaintiff with a Notice of Hearing which informed plaintiff of her right to representation in the body of the Notice, and included a two-page handout that described, in detail, her right to representation. (*Id*.). Additionally, prior to her administrative hearing, plaintiff signed a waiver of representation form that complied with all of the procedures outlined in the Hearings, Appeals and Litigation Law (HALLEX) Manual I-2-1-80. (Tr. 132-33). On the form, plaintiff confirmed that she understood her right to be represented. (Tr. 132). She acknowledged that she did not have a representative and stated that she did not have any questions. (*Id*.). With her signature, she attested to the following: "I understand my right to representation at the hearing. I voluntarily waive this right and I request to proceed without representation. I acknowledge that, along with the Notice of hearing, I received a list of organizations that provide legal services." (*Id*.). Additionally, in June 2015, plaintiff obtained an attorney who submitted his representative form to the agency, but he subsequently withdrew his representation in August 2016. (Tr. 105, 126-27). In January and February 2017, plaintiff wrote letters indicating she had engaged attorneys who had agreed to a limited representation while they evaluated her claim. (Tr. 262-63, 267-68). Accordingly, the

5

Commissioner fulfilled his duty to inform plaintiff of her right to representation, and the record reflects that plaintiff ultimately waived that right.

The ALJ also sufficiently questioned plaintiff in order to develop the record. (Doc. 19). Plaintiff had repeated opportunities to present the agency with her subjective complaints regarding her allegedly disabling limitations. The State agency developed the record by sending plaintiff forms that inquired about her medical conditions, limitations, daily activities, medicines, and medical treatment, and provided her with the opportunity to make any other remarks about her condition. (Tr. 210-16, 220-27). After plaintiff retained counsel, the hearing office contacted the attorney and asked him to assist plaintiff in submitting medical records and in updating the agency about recent medical treatment, medications, and work background. (Tr. 237-47). Plaintiff and her counsel responded to the agency's requests and submitted updated information. (Tr. 250-53). The agency secured plaintiff's authorization to assist her in obtaining her medical records. (Tr. 570). In fact, all of the medical evidence in the record was obtained by the agency on plaintiff's behalf. (Tr. 321, 384, 387, 443-44, 568-70, 585). Finally, the ALJ further developed the medical record after the hearing by ordering a consultative evaluation of plaintiff. (Tr. 585-600).

With respect to the administrative hearing, plaintiff argues that if the ALJ had asked her probing questions about her headaches, the ALJ would have found she is limited to simple, routine, repetitive tasks, which would meet the GRID[4] requirements.

---

[4] The medical-vocational guidelines, or GRIDS, "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." *McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir. 2011). The GRIDS are set forth at 20 CFR Part 404, Subpart P, Appendix 2. Plaintiff's past relevant work was skilled, with a specific vocational preparation (SVP) of 4. SVP describes "[t]he amount of time required for a typical claimant to learn the techniques, acquire the information, and develop the facility needed for average performance in a job." *Program Operations Manual System (POMS)*, http://policy.ssa.gov/poms.nsf/lnx/0425001001. An SVP of four is defined as "[o]ver 3 months up to and including 6 months." *Id.*

(*Id.*). However, it is unclear what additional information plaintiff would have provided at the hearing in response to these questions that the ALJ did not otherwise have.

At her consultative examination, the examining physician, Veronica Weston, M.D., reported on her careful examination of plaintiff and confirmed that plaintiff had uncontrolled hypertension and headaches that were secondary to hypertension, which caused exertional limits consistent with sedentary work. (Tr. 591).

Both the agency and the ALJ provided plaintiff with numerous opportunities to describe her symptoms. Plaintiff reported in her disability report that she sleeps "all the time because of headaches," and her headaches appear "at least 3 to 4 times a day." (Tr. 234). Plaintiff described her headaches to medical professionals, on social security forms, and to the CE. The ALJ noted that from June 2014 to March 2017, medical records showed her headaches were "occasional global tension type headaches" that "were better with Clonodine" and stable when plaintiff was compliant with medication. (Tr. 15). He noted that plaintiff visited the emergency room for her headaches, but that was when she did not have medication. (Tr. 17). The ALJ was not required to ask plaintiff questions that were already answered in the record, or were not supported by medical evidence in the record.

Plaintiff argues that the ALJ should have solicited testimony about whether her impairments interfered with her ability to focus, concentrate, or persist at tasks. She argues that such interference would prevent her from performing her past relevant work, but provides no evidence other than her subjective complaints that her headaches in fact cause such interference. Plaintiff argues that she "did not understand" what information she was supposed to provide regarding her limitations. However, as discussed above, plaintiff knowingly waived her right to representation and the ALJ was not required to substitute as her counsel. The ALJ's decision reflects that he understood plaintiff's allegations regarding her symptoms. (Tr. 14-18). He lawfully found that these alleged limitations were not consistent with the record. (Tr. 18). Accordingly, substantial evidence on the record as a whole supports the ALJ's conclusion.

7

Finally, plaintiff also argues that the ALJ failed to ask the vocational expert probing questions at the administrative hearing. The vocational expert testified that the *Dictionary of Occupational Titles* (*DOT*) classified plaintiff's past relevant work as a collections agent at the light work level. (Tr. 66). However, the vocational expert testified that the job was usually performed at the sedentary level. Plaintiff argues that the ALJ should have asked the vocational expert to explain the obvious conflict between this testimony and the *DOT's* classification. However, the ALJ did not need to resolve the conflict, because he credited the *DOT* classification over the vocational expert's testimony and found that the job was light work as generally performed. (Tr. 19). Plaintiff concedes that the work she performed as a collections agent was sedentary exertional work as actually performed, as testified by the vocational expert and found by the ALJ. (*Id.*).

Plaintiff argues that she did not provide work history and background information on her job as she performed it in 2009, and the ALJ should have inquired into whether the skill requirements had increased between 2009 and 2014. (Doc. 19). The job of a collections agent was classified as semi-skilled/skilled both generally and as actually performed, and the ALJ did not find that plaintiff had limitations that would prevent the performance of the mental requirements of that work. (*Id.*). The ALJ did not need to consider transferable skills because he found that plaintiff could do her past relevant work. (*Id.*). He did not need to adopt the vocational expert's responses to his questions about off-task behavior because he found that such limitations were not supported by the record. (*Id.*). Accordingly, the ALJ complied with all of the procedures required under the Act and fulfilled his duty to fully and fairly develop the record. The ALJ's conclusion that plaintiff could return to her past work as actually performed is supported by substantial evidence on the record as a whole.

**B. Step 2 Evaluation**

In her second point, plaintiff argues that the ALJ failed to properly evaluate her symptoms from her uncontrolled hypertension and headaches secondary to hypertension

at Steps Two and Four. (Doc. 19). Even though the ALJ did not find these impairments to be severe at Step Two, once the ALJ found she had the one severe impairment, his failure to designate another impairment as "severe" at Step Two was not error, because he properly continued in the evaluation process and considered the effects of all impairments throughout that process. *Harper v. Colvin*, No. 1:14 CV 31, 2015 WL 5567978, at *6 (E.D. Mo. Sept. 22, 2015). *See also Winn v. Comm'r of Soc. Sec.*, 615 Fed.Appx. 315, 326 (6th Cir. 2015); *Groberg v. Astrue*, 415 Fed.Appx. 65, 67 (10th Cir. 2011); Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law & Procedure in Federal Court* § 3:14 (Apr. 2018). This procedure was consistent with the regulations that require consideration of the combined effect of all of a claimant's impairments without regard to whether any such impairment, if considered separately, would be considered not severe. *See* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

The ALJ did not find plaintiff's hypertension and headaches to be severe impairments at Step Two, but this was not error, as he discussed them in detail when making the RFC assessment at Step Four. (Tr. 14-18). The ALJ recognized that the records documented episodes of uncontrolled hypertension that resulted in complaints of headache. (Tr. 17). He noted, however, that there was no persuasive evidence that plaintiff's hypertension has resulted in complications such as left ventricular failure, atherosclerotic heart disease, retinal hemorrhages, exudates, vascular accidents, cerebrovascular insufficiency, renal failure or encephalopathy. (*Id*.). There was no persuasive evidence that plaintiff's hypertension resulted in dizziness, flushed face, head pain, epistaxis, nervousness or fatigue. (*Id*.). There was no persuasive evidence that any treating physician had determined that plaintiff's hypertension was uncontrollable despite compliance with treatment and that plaintiff's hypertension resulted in severe limitations of function lasting twelve consecutive months in duration, despite treatment. (*Id*.).

At Step Four, the ALJ's evaluation was well-supported, and he identified a number of factors that undermined plaintiff's testimony. Plaintiff argues that there was no

evidence that she was not compliant with medication. (Doc. 19). The ALJ reached the opposite conclusion – he found that "[a]ctually, the records are replete with documentation that the claimant was not compliant with regard to her medication and treatment recommendations." (Tr. 18). For example, plaintiff reported that she was out of medication. (Tr. 15, 337). She continued to smoke, even though she was advised to quit. (Tr. 15, 445). She was advised to lose weight but failed to do so. (Tr. 15, 366, 512, 526). She was not checking her blood pressure at home. (Tr. 15, 445). She did not keep a diet log. (*Id*.). In March 2015, plaintiff reported that her primary care physician had increased her medication, but she had not picked up the new medication. (Tr. 16, 408). An ALJ can appropriately consider that a claimant's subjective complaints are undermined by failure to comply with treatment. *See* 20 C.F.R. § 404.1529, SSR 16-3p.

The ALJ properly considered that when compliant with medication, plaintiff's symptoms were controlled. (Tr. 18). "An impairment which can be controlled by treatment or medication is not considered disabling." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (quotations omitted). The ALJ noted that when plaintiff sought emergency care for her high blood pressure, the doctor administered medication, and her blood pressure decreased. (Tr. 14-18). The ALJ considered that the fact that plaintiff's symptoms resolved with treatment undermined the severity of her complaints. Further, as noted above, the ALJ discussed that even if and when plaintiff's hypertension was uncontrolled, the record did not support a conclusion that it, or the associated headaches, resulted in limitations greater than those included in the RFC assessment. (Tr. 17-18).

As long as substantial evidence supports the ALJ's decision, the Court may not reverse the final administrative decision merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier*, 294 F.3d at 1022. In this case, the ALJ lawfully reviewed the medical evidence and all other evidence of record in determining plaintiff was not disabled, and substantial evidence supports that determination.

## VII. CONCLUSION

For the reasons set forth above, the Court concludes that the Commissioner's final decision that plaintiff was not disabled is supported by substantial evidence on the record as a whole. The decision of the Commissioner is affirmed. An appropriate Judgment Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 23, 2019.